**Statement in Support of the Filing of the Involuntary Petition**

**A.     Background**

This involuntary Chapter 11 petition is being filed by Surrey NY LLC (the "Petitioner") against 20 East 76th Street Co., LLC (the "Alleged Debtor") pursuant to 11 U.S.C. §303(b)(2). Bankruptcy relief is being sought on an emergency basis, to prevent the forfeiture of the Alleged Debtor's valuable ground lease in the face of efforts by the ground lessor, Surrey Realty Associates LLC (the "Ground Lessor"), to wrongfully terminate the same in the midst of the Covid-19 crisis.

The invocation of bankruptcy is necessary to preserve the status quo and stay the Ground Lessor's actions. Moreover, bankruptcy is the only available forum for relief at this time as the New York state courts are closed to commercial disputes of the nature presented herein pursuant to Administrative Order of the Chief Judge of the Courts (AO/78/20) dated March 20, 2020.

The Alleged Debtor operates the Surrey Hotel (the "Hotel") pursuant to that certain long term ground lease by and between 22 East 76th Street, Inc., as predecessor-in-interest to Ground Lessor, and Lyden Hotel Co., as predecessor-in-interest to the Alleged Debtor, for a term which commenced in 1971 and is currently ending in 2046 (the "Ground Lease."). The Ground Lease stands as Petitioner's collateral under that certain Loan Agreement, dated as of May 22, 2014, as amended by and between Tenant, as borrower, and CIBC Inc., ("Original Lender") as assigned under that certain Assignment and Assumption, dated as of May 16, 2018 by Original Lender to Petitioner (the "Loan") to secure obligations in the principal amount of $45 million. The Loan has been subject to maturity and other defaults by the Alleged Debtor since January 2018.

This petition was made necessary as a result of Ground Lessor's wrongful and bad faith attempt to terminate the Ground Lease based upon the alleged failure of the Alleged Debtor to pay April rent in the midst of the worldwide COVID-19 pandemic and at a time when Ground Lessor knew the Alleged Debtor had been forced to temporarily shut down the Hotel. Ground Lessor served a purported Notice to Cure dated April 9, 2020 (the "Default Notice") alleging, *inter alia*, that the Alleged Debtor has defaulted in the payment of rent for the month of April 2020 (the "Alleged Default") and demands a cure of the Alleged Default by April 27, 2020 (the "Tenant Cure Date") the failure of which will result in termination of the Ground Lease.

The Ground Lessor's malevolent actions in seeking to terminate the Alleged Debtor's Ground Lease violate the intent, letter and spirit of multiple Executive Orders issued by the Governor and Mayor under the "New York on Pause" crisis protocol. As with virtually every other business in New York, the Surrey Hotel is closed for the foreseeable future. Thus, the Alleged Debtor is unable to pay its debts as they become due within the meaning of 11 U.S.C. §303(b)(2), including the April rents alleged to be due under the Ground Lease.

Ground Lessor seeks to take advantage of a worldwide crisis as a means to take back the valuable Ground Lease. Upon information and belief, the Alleged Debtor is working with Ground Lessor to that end, as it is already in default of the Loan and through termination of the Ground Lease would effectively wipe out its debt and the claims of other legitimate creditors. Even after the Covid-19 restrictions end, it will take months, if not longer, for business in the

City of New York to return to a semblance of normalcy. Thus, the Ground Lease will require restructuring in bankruptcy over an extended period of time, as hotel operations will likely be slow to rebound.

The Ground Lessor has refused to rescind or extend the Default Notice, and instead has announced its intention to recapture the Ground Lease – debt and lien free – notwithstanding the crippling effects of the Covid-19 crisis. By proceeding with the Default Notice, the Ground Lessor is manifestly seeking to capitalize on the Covid-19 crisis to the detriment of all other creditors and stakeholders, including Petitioner, which holds a significant partially secured claim. The commencement of this involuntary case stays the Ground Lessor's brazen acts of brinkmanship.

**B.    Petitioner's Standing with Express Reservations**

Petitioner is currently owed approximately $60 million due under the Loan, including all unpaid principal, accrued interest, and other costs and fees. The fair market value of the Ground Lease has eroded as a result of the Covid-19 crisis, and, in fact, was declining in value before the start of the epidemic. Accordingly, for purposes of bankruptcy, Petitioner is a partially secured creditor within the meaning of 11 U.S.C. §506(a), and retains an undersecured claim in the amount of at least $16,750. Thus, Petitioner has standing to commence this involuntary case for purposes of 11 U.S.C. §303(b).

In commencing this involuntary case, Petitioner recognizes that an involuntary filing is generally reserved for unsecured creditors. However, there are occasions when a partially secured creditor may commence an involuntary case under Section 303 without waiving its security interest entirely, so long as appropriate reservations are made. To this end, Petitioner hereby expressly reserves all of its rights and remedies as a partially secured creditor in bankruptcy. Accordingly, nothing contained herein should be deemed, or constitutes, a waiver of either Petitioner's partially secured claim under 11 U.S.C. §506(a) in an amount to be subsequently fixed by the Bankruptcy Court, or Petitioner's rights and remedies under the leasehold mortgage or other loan and collateral documents.

It has long been recognized that a partially secured creditor may, in fact, commence an involuntary case without waiving its lien and security interest, so long as the existence of the lien and security interest is duly referenced. *See, In re Central Illinois Oil and Refining Co. [Flori Pipe Co. v. Hale]*, 133 F.2d 657, 659 (7th Cir. 1943) ["But it is not the fact of the filing of the involuntary petition in bankruptcy by a secured creditor that operated as a waiver. It is the filing of such a petition by a secured creditor who makes no mention of such security, that bars him. If appellant is to be considered a secured creditor, he failed to state the amount of his debt which is not covered by the security, which unsecured balance, if it exceeds $500, gave him the right to file such petition."].

The ability of a secured creditor to waive a limited portion of its secured claim to meet the minimum unsecured debt requirement remains good law under the Bankruptcy Code. *See, e.g., Matter of E.-W. Assocs.*, 106 B.R. 767, 771 (S.D.N.Y. 1989) [". . . fully secured creditor may elect to waive only the dollar amount necessary to validate the involuntary petition and have

that waiver ineffective as to the balance of the secured claim"]; *In re Allen-Main Assocs. Ltd. P'ship*, 223 B.R. 59, 61 (B.A.P. 2d Cir. 1998)["Under the appropriate circumstances, it is also possible for a fully secured creditor to waive all or part of its claim to become an eligible unsecured creditor."].

This case law confirms that a partially secured creditor, such as Petitioner, may commence an involuntary case without a complete waiver of its secured claim. Petitioner is proceeding on this basis – to the extent necessary or applicable, Petitioner agrees to carve-out or waive a limited portion of its secured claim to the extent of $16,750 to meet the statutory requirements of the Bankruptcy Code.

**C.    Numerosity**

While, intuitively, a hotel normally has more than twelve (12) creditors at any point in time, here the Alleged Debtor's operating structure suggests that there may be less than twelve (12) creditors, such that Petitioner alone has standing to commence the involuntary case. Specifically, it appears that an affiliated non-debtor management company, known as Denihan Hospitality Group, performs the bulk of the buying and contracting services for the hotel, and in turn, supplies the Alleged Debtor with required goods and services to operate the hotel. Under this structure, Denihan Hospitality Group has direct privity with vendors, and then bills the Alleged Debtor (likely charging an administrative fee). Thus, upon information and belief, the Alleged Debtor potentially has less then twelve direct creditors.

With businesses closed, communication with other potential creditors has been severely curtailed. To the extent more than twelve creditors exist, they will be provided with notice and an opportunity to join the involuntary petition pursuant to 11 U.S.C. §303(c). In the meanwhile, however, given the emergency nature of the involuntary filing, Petitioner is proceeding as the sole petitioning creditor in the good faith belief that it has sufficient standing to commence this involuntary case.

Dated: New York, New York
      April 26, 2020

                                    Goldberg Weprin Finkel Goldstein LLP
                                    Attorneys for Petitioner
                                    1501 Broadway, 22nd Floor
                                    New York, New York 10036
                                    (212) 221-5700

                                    By:  /s/ Kevin J. Nash