| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | Hearing Date and Time:<br>July 9, 2020 at 10:00 a.m. |

-----------------------------------------------------------x

In re:  Chapter 11

20 East 76th Street Co., LLC,  Case No. 20-11007-MG

                Alleged Debtor.

-----------------------------------------------------------x

### PETITIONER'S SECOND SUPPLEMENTAL STATEMENT
### IN SUPPORT OF ENTRY OF AN ORDER FOR RELIEF

**TO THE HONORABLE MARTIN GLENN,**
**UNITED STATES BANKRUPTCY JUDGE:**

       Surrey NY LLC ("Petitioner") by its counsel, Goldberg Weprin Finkel Goldstein LLP, as and for its Second Supplemental Statement in support of the involuntary petition filed against 20 East 76th Street Co., LLC (the "Alleged Debtor" or the "Hotel"), respectfully alleges as follows:

#### Preliminary Statement

       1.    Various inquiries were made by the Court during the status conference held on June 30, 2020 following the joinder of eighteen (18) additional creditors to the involuntary petition. The Court's inquiries and questions focused primarily on the following areas: (i) whether Petitioner's claims against the Alleged Debtor were nonrecourse and, if so, what were the consequences; (ii) what was the scope and potential impact of prior state court litigation concerning a failed attempt by the Alleged Debtor to sell the Hotel (presumably under collateral estoppel related doctrines); and (iii) whether the parties could agree on a budget in the event an order for relief is entered under Chapter 11 of the Bankruptcy Code, as opposed to a straight liquidation under Chapter 7 of the Bankruptcy Code.

1

2.     This Second Supplemental Statement addresses these inquiries, as well as provides copies of the Loan Agreement and prior state court decision on summary judgment as exhibits to better round out the record for purposes of the involuntary case.[1]

**A.     The Recourse Aspects of Petitioner's Claim**

3.     Insofar as the question of whether Petitioner's claim is nonrecourse, a copy of the underlying Loan Agreement dated May 22, 2014 between 20 East 76th Street Co., LLC, as borrower, and Petitioner's predecessor, CIBC Inc. as lender, is annexed hereto as <u>Exhibit "A"</u> (the "Loan Agreement").  As noted during the recent status conference, there are nonrecourse and recourse aspects of the loan.  These distinctions are delineated in the exculpation provisions of the Loan Agreement which limit the Lender's recovery to the outstanding Collateral, subject to various triggering events and exceptions under which full recourse liability arises.

4.     The exculpation provisions are set forth in Section 8.16 of the Loan Agreement, which states in relevant part:

> Notwithstanding anything in the loan documents to the contrary, but subject to the qualifications set forth in this <u>Section 8.16</u>, Lender agrees that Borrower shall be liable on the Debt . . . to the full extent (but only to the extent) of the Collateral . . . except with respect to the liability described below in this <u>Section 8.16</u> . . . [whereupon] Borrower shall be fully liable, and subject to legal action, for all losses, costs and expenses incurred by the Lender . . . .

5.     Among many events, one of the triggers for recourse liability is the Alleged Debtor's failure to make deposits for the payment of Taxes [*See,* Section 8.16(vi)].  Here, the Alleged Debtor's failure to make tax deposits existed prior to the filing of the Involuntary Petition and is continuing through today.  Indeed, the Petitioner's funding of taxes is a prime

---

[1]  Petitioner presumes that the Ground Lessor is providing the Court with a copy of the Ground Lease.

subject of the budget discussions between the parties. Thus, in at least one undeniable regard, the debt is recourse.

6.   It is noteworthy that Section 8.16 also provides that for purposes of bankruptcy, the loan is recourse, and the Petitioner may file a claim for the full amount of the debt against the Borrower in the event the Alleged Debtor "acquiesced" to the involuntary filing. Since the Alleged Debtor answered without moving to dismiss the involuntary, there is a question of whether this constitutes acquiescence, triggering recourse liability. However, given the Alleged Debtor's nonpayment of taxes, the loan became recourse, and this case is distinguishable from the decision of Judge Mary Kay Vyskocil in *In re Taberna Preferred Funding V LLC*, 594 B.R. 576 (Bankr. S.B.N.Y. 2018).

7.   There, the Court ultimately rejected the petitioning creditors' contention that the provisions of 11 U.S.C. §1111(b) provide standing under Section 303 of the Bankruptcy Code for a nonrecourse lender. Ruling that the provisions of Section 1111(b) do not come into play until after the Court determines whether to enter an Order for Relief in the first place, Judge Vyskocil dismissed the involuntary petition based upon a factual finding that the underlying Indenture was totally nonrecourse and delineated as such. Here, while there is an exculpation clause under Section 8.16 of the Loan Agreement, it is qualified, triggering full recourse liability. Thus, the *Taberna* case is factually inapposite.

8.   Substantively, the decision in *Taberna* is not without countervailing authority. For example, Judge Vyskocil referenced *In re East-West Assocs.* 106 B.R. 767 (S.D.N.Y. 1989), where the District Court reviewed the standing of a mechanic's lien holder. Although Judge Vyskocil distinguished *East-West* on the basis that it addressed a motion to dismiss an involuntary case after the Order for Relief was entered, the District Court in *East-West* noted that

3

"it seems that the Petitioning Creditors are eligible under Section 303(b)" of the Bankruptcy Code, even though, as the holders of mechanic's liens, the petitioners were limited to enforcing their claims against the alleged debtor's property.

9. In *In re Sundown Assocs.*, 150 B.R. 156, 159 (Bankr. E.D. Va. 1992), the Court, citing *East-West,* upheld an involuntary filing by a nonrecourse creditor, based on the expansive definition of a claim under the Bankruptcy Code. Relying on the Supreme Court interpretation of Section 101 in the context of a debtor's eligibility to file a "Chapter 20" petition in *Johnson v. Home State Bank*, 111 S.Ct. 2150 (1991) the Court in *Sundown* explained:

> In holding that the mortgagee held a claim against the debtor in spite of the debtor's lack of personal liability, the [Supreme C]ourt made clear that Congress intended in § 101(5) "to adopt the broadest available definition of ∸claim∗" . . . 111 S.Ct. at 2154. The court also observed:
>
> A fair reading of § 102(2) is that a creditor who, like the Bank in this case, has a claim enforceable only against the debtor's property nonetheless has a "claim against the debtor" for purposes of the Code.
>
> . . . 111 S.Ct. at 2155.

*Id.*, at 159. Indeed, while not typically litigated, the rule of construction under 11 U.S.C. §102(2) does provide, separately from the main definitions under Section 101, that a claim against the debtor "includes claim against property of the debtor". This lends strong support to the contention that an exculpation clause (particularly one which, as here, is qualified) does not deny Petitioner standing under Section 303. Not only is a claim defined broadly in bankruptcy, but the concept of a claim should be construed broadly under the Bankruptcy Code.

10. At any rate, whatever standing issue still remains regarding Petitioner is mooted by the joinder of eighteen other creditors, which are treated under Section 303(c) as if they were original petitioners, retroactive to the commencement of the involuntary case.

**B.      Prior State Court Litigation**

11.     The Court also inquired as to the scope of the issues previously litigated in the state court relating to the first of three failed attempts to sell the Hotel. In the matter of *2BSurrey LLC v. 20 East 76th Street LLC* (Index No. 652226/2014), the first would-be buyer, 2BSurrey LLC, asserted claims against the Alleged Debtor for (i) specific performance seeking to compel the Alleged Debtor to obtain the consent of the Ground Lessor to the sale and to close under the contract; and (ii) injunctive relief barring the Alleged Debtor from selling the Hotel to a third party prior to conclusion of the litigation.

12.     In dismissing the action, Judge Jeffrey Oing found the Alleged Debtor had made an effort to obtain the required consent, but was unable to do so because of demands made by the Ground Lessor for concessions that were adverse to the Alleged Debtor's business interests including, demanding material changes to the terms of the Ground Lease. For example, the Ground Lessor demanded an amendment to the Ground Lease to prevent any future transfers by removing the "reasonableness" standard and replacing it with a "sole discretion" standard. The Court found there was no basis under the purchase agreement to compel the Alleged Debtor to grant the concessions, and, since the condition precedent of obtaining consent could not be met, the complaint was dismissed. It is noteworthy that while the Complaint was dismissed, the Court did not find any prevailing party in the litigation because the decision resulted from the conduct of the third party Ground Lessor and declined to award any legal fees to the Alleged Debtor. The matter was subsequently discontinued without appeal, and the deposit was returned.

13.     The Ground Lessor was not a party to that case and the Court never had the opportunity to make a determination whether the Ground Lessor's refusal to consent was reasonable. A complete copy of the decision is annexed hereto as <u>Exhibit</u> "B" for the Court's

review.  Given the absence of the Ground Lessor, the decision carries no collateral estoppel or res judicata effect, although it certainly references an air of resistance which punctuated the later attempts to sell the Hotel.

**C.     The Budget**

14.    Petitioner fully appreciates and acknowledges that a choice as between Chapter 11 or Chapter 7 turns on the Petitioner's willingness to fund a budget.  As noted, Petitioner recognized this reality from the start, and has indicated during still preliminary discussions with the Alleged Debtor and Ground Lessor (which presumably will continue) that Petitioner is willing to fund certain items to maintain the status quo, including July 1, 2020 through December 31, 2020 real estate taxes on a monthly basis (not lump sum) during the period an adversary proceeding is pending and prosecuted against the Ground Lessor (presumably to be joined by an operating trustee).  Hopefully the adversary proceeding can be prosecuted on an expedited basis and can potentially facilitate meaningful mutual good faith negotiations.

15.    Petitioner is also willing to fund certain utility and security expenses of up to $15,000 per month (likewise during the pendency of the adversary proceeding).  Additionally, Petitioner is also prepared to fund an initial litigation budget of $50,000 to the trustee and counsel to launch the adversary proceeding.

16.    Petitioner is not willing to fund ground rent while the adversary proceeding is being litigated.  Entitlement to rents is highly disputed at this point and should be held in abeyance pending further developments in the adversary proceeding.  Payment of real estate taxes, utilities and security present different considerations.  Petitioner anticipates further negotiations on a budget prior to Thursday, but this commitment has a total potential value of

6

approximately $2.0 million over the next six (6) months, depending on the timetable for the adversary proceeding.

    WHEREFORE, Petitioner respectfully requests the entry of an Order for Relief.

Dated: New York, New York
       July 7, 2020

                                    Goldberg Weprin Finkel Goldstein LLP
                                    *Attorneys for the Petitioner*
                                    1501 Broadway, 22nd Floor
                                    New York, New York 10036

                                    By:    /s/ Kevin J. Nash, Esq.